UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MELANIA PERVU and NICOLAE PERVU,

        **Plaintiffs,**

 vs.              6:19-CV-00861
                    (MAD/TWD)
CITY OF ONEONTA
DAVID MERZIG,

         **Defendants.**
_____

APPEARANCES:         OF COUNSEL:

**MELANIA PERVU**
**NICOLAE PERVU**
26 Maple Street
Oneonta, New York 13820
Plaintiff *pro se*

**JOHNSON & JOHNSON, LLC**    **APRIL J. LAWS, ESQ.**
648 Plank Road, Suite 204      **COREY A. RUGGIERO, ESQ.**
Clifton Park, New York 12020
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  On June 17, 2019, *pro se* plaintiffs Melania and Nicolae Pervu ("Plaintiffs") commenced this action against Defendants David Merzig and the City of Oneonta ("Defendants"). *See* Dkt. No. 1 at 1. In their complaint, Plaintiffs' only remotely cognizable allegation claimed that Defendants had falsely classified Plaintiffs' apartment building, located at 195 Main Street, Oneonta, New York 13820, as uninhabitable. *See* Dkt. No. 1 at 3. However, in their response to Defendants' motion to dismiss, Plaintiffs asserted a litany of additional claims, despite not seeking to amend their complaint. These claims include a 42 U.S.C. § 1983 violation for discrimination,

defamation, perjury, false statements, witness tampering, and "a very clear case of judicial misconduct" during state court proceedings initiated by Defendants. *See* Dkt. No. 18 at 1-2.

Currently before the Court is Defendants' motion to dismiss pursuant to Federal Rules of Procedure 8(a) and 12(b)(6). *See generally* Dkt. No. 16-1.

## II. BACKGROUND

Plaintiffs have owned the property formerly known as the Oneonta Hotel since May 22, 2015 (the "Property"), and, until February 2019, ran it as an apartment building for low-income[1] residents. *See* Dkt. No. 1 at 3; Dkt. No 16-1 at 11. The building did not have a Certificate of Compliance, a prerequisite for rental occupancy, when Plaintiffs purchased it, as it was in some state of disrepair. *See* Dkt. No. 16-1 at 7. Plaintiffs failed to remedy the violations preventing them from obtaining this certificate, and on January 5, 2017, the City of Oneonta's Board of Public Service (the "Board") deemed the building to be "unsafe" and "order[ed] immediate repair." Dkt. No. 16-1 at 8. The Board also resolved that if Plaintiffs failed to make the repairs within thirty days, it would issue an order to vacate the Property. Dkt. No. 16-1 at 8.

On September 14, 2017, more than nine months after the Board's resolutions, the City's Code Enforcement Officer found multiple violations, including the following: "extensive water damage (including active water leaks), inoperable carbon monoxide detectors, inoperable and/or missing smoke detectors, incorrectly located smoke and/or carbon dioxide detectors and inoperable lights and/or emergency signage." Dkt. No. 16-1 at 9. The Code Enforcement Officer notified the Board, and on November 2, 2017, the Board moved to order that the building be

---

[1] Information contained in the "Background" section of this Memorandum-Decision and Order that is not otherwise taken from Plaintiffs' complaint, is taken from the publicly available information from the ongoing litigation between the parties in Otsego County Supreme Court. *See* Index No. EF2018-503.

2

vacated, but agreed not to take further action until after April 30, 2018, "so as to allow the low-income tenants to find substitute housing" and to give Plaintiffs one last chance to remedy the violations. Dkt. No. 16-1 at 9. On March 8, 2018, the City of Oneonta circulated a notice to tenants and funding agencies declaring the building "to be unsafe for occupancy, due to significant violations of the New York State Housing and Building Code" and advising tenants to vacate the building "[u]nless the landlord brings the property into full building code compliance by April 30, 2018[.]" Dkt. No. 1 at 5.

On June 26, 2018, after Plaintiffs had continued to rent out the Property in violation of the Board's May 15, 2018 order to vacate, Defendants filed a petition in Otsego County Supreme Court pursuant to Sections 302, 303, and 309 of the New York State Multiple Dwelling Law. *See* Dkt. No. 16-1 at 10. On August 14, 2018, Plaintiffs answered the petition and brought a counterclaim against the City of Oneonta for violation of their due process rights under the Fifth and Fourteenth Amendments. *See* Dkt. No. 16-1 at 10. On September 7, 2018, the Otsego County Supreme Court held an evidentiary hearing, and three days later issued an order requiring Plaintiffs to remedy all code violations by January 11, 2019, or "immediately be in Contempt of the Court." Dkt. No. 16-1 at 10.

However, after another inspection on January 15, 2019, the City of Oneonta found "numerous remaining Code violations such as extensive water damage and active leaks and inoperable or missing smoke detectors, as well as numerous other health and safety violations." Dkt. No. 16-1 at 11. Accordingly, in a February 5, 2019 hearing, the state court ordered all tenants to vacate the building by February 7, 2019. *See* Dkt. No. 16-1 at 11.

According to Plaintiffs, "the city Oneonta attorney David Merzig and his wife Margie Merzig, Chair of the City Board, decided to act against me, my family, and my tenants." Dkt. No.

3

1 at 3. Indeed, Plaintiffs allege that "[t]he city administration represented by David Merzig us[ed] false statements, weaponized the code enforcement office and using false pretenses, asked the court to evict by force my tenants[.]" Dkt. No. 1 at 3. Plaintiffs further allege that these acts, among others mentioned in the complaint, constitute "discrimination against [their] [immigrant] status, selective enforcement, defamation, and slander" and thus violate Section 1983. Dkt. No. 18 at 1. Specifically, Plaintiffs claim that Defendants used misleading photographs as evidence to obtain the warrant of eviction, and that their purpose "has been nothing but discriminatory, as their real interest was not [t]o work with us but to do everything in order to shut our property down." *Id.* at 4.

In their motion to dismiss, Defendants argue that, even under the more liberal pleading standard granted to *pro se* plaintiffs, the complaint fails to allege any cognizable injury under Section 1983. *See* Dkt. No. 16-1 at 12-13. Further, Defendants assert that Plaintiffs' complaint fails to include any factual statements or claims that would satisfy Rule 8's pleading standard. *See id.* at 14 (quoting Fed. R. Civ. P. 8(a)(2)). Regardless of the complaint's sufficiency, Defendants also argue that Plaintiffs claims are barred by collateral estoppel because "Plaintiffs have a full and fair opportunity to litigate their counterclaims in the state court proceeding." Dkt. No. 19 at 11. In short, Defendants claim that "Plaintiffs are merely unhappy with the rulings by the state court judge [who] direct[ed] Plaintiffs to either repair the building or vacate the tenants." Dkt. No. 16-1 at 15.

Currently before the Court is Defendants' motion to dismiss.

### III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Furthermore, "[w]hen deciding a motion to dismiss, the [c]ourt's review is ordinarily limited to 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 379 (S.D.N.Y. 2013) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) and citing *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). Accordingly, "[w]hen matters outside the pleadings are presented [in support of or] in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir.2000) (alteration and internal quotation marks omitted). A court may, under appropriate circumstances, "consider material outside of the pleadings on a motion to dismiss." *Chamberlain*, 986 F. Supp. 2d at 379 (citing *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)). If, for example, the record clearly demonstrates "that no dispute exists regarding the authenticity or accuracy of the document[s]," *Faulkner*, 463 F.3d at 134, then "a court may consider documents upon the terms and effect of which the complaint relies heavily—that is, 'integral' documents—without converting a motion to

5

dismiss into a summary judgment motion," *Chamberlain*, 986 F. Supp. 2d at 379 (citing *Chambers*, 282 F.3d at 153).

B.  **Abstention Under *Younger v. Harris*, 401 U.S. 37 (1971)**

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). In *Younger*, the Supreme Court recognized a limited exception to this general rule, holding that federal courts should abstain from exercising jurisdiction over suits to enjoin pending state criminal proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute. *See Younger v. Harris*, 401 U.S. 37, 53-54 (1971) (citation omitted).

*Younger* is not based on an Article III requirement, but instead is a "prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted). The rationale behind *Younger* was set forth by the Second Circuit in *Spargo*:

> "Our Federalism" in its ideal form, as the Supreme Court explained in *Younger*, strives towards "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." In recognition of this balance of interests, *Younger* generally prohibits courts from "taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings" so as to avoid unnecessary friction. Giving states "the first opportunity ... to correct their own mistakes" when there is an ongoing state proceeding serves the vital purpose of "reaffirm[ing] the competence of the state courts," and acknowledging the dignity of states as co-equal sovereigns in our federal system.

*Spargo*, 351 F.3d at 75 (internal quotations and citations omitted).

Although *Younger* itself dealt only with a pending criminal proceeding, the "*Younger* abstention has been extended to civil proceedings, ... and state administrative proceedings[.]" *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir. 1990) (internal citations omitted). As noted by the Sixth Circuit, "*Younger* cases generally have a common procedural posture." *Devlin v. Kalm*, 594 F.3d 893, 894 (6th Cir. 2010). "In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings." *Id.* at 894-95 (quoting *Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984)); *see e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10-11 (1987) (federal plaintiff seeking to enjoin state plaintiff from enforcing a judgment against him); *Moore v. Sims*, 442 U.S. 415, 423 (1979) (federal plaintiffs seeking to enjoin state proceedings against them for child abuse).

To determine whether abstention is appropriate under *Younger*, district courts must conduct a three-pronged inquiry: "[a]bstention is mandatory where: (1) 'there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an avenue open for review of constitutional claims in the state court.'" *Glatzer v. Barone*, 394 Fed. Appx. 763, 764 (2d Cir. 2010) (quoting *Liberty Mutual Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009)). The Supreme Court, however, has stressed that "[c]ircumstances fitting within the *Younger* doctrine . . . are 'exceptional'" and include only "'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68 (1989)).

7

Furthermore, Second Circuit has recently emphasized that "[c]ivil contempt orders and orders requiring the posting of bonds on appeal fall into" *Younger*'s third category, *i.e.*, "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Disability Rights New York v. New York*, 916 F.3d 129, 133 (2d Cir. 2019) (citing *NOPSI v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). Indeed, the Supreme Court has found that "[t]he contempt power lies at the core of the administration of a State's judicial system," and "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory[,]" and, accordingly, that *Younger* requires abstention where federal adjudication would interfere with such authority. *Juidice v. Vail*, 430 U.S. 327, 335, 336 n.12 (1977)); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (finding that *Younger* abstention is appropriate when pending state court proceedings involve enforcing orders and judgments, as federal courts must exercise proper "respect for the ability of state courts to resolve federal questions presented in state-court litigation"); *Dudla v. P.M. Veglio LLC*, No. 1:13-CV-0333, 2016 WL 1068120,*7 (N.D.N.Y. Mar. 15, 2016) (quoting *Moore v. Sims*, 442 U.S. 415, 423 (1979)) (noting that "the 'presence of such other vital concerns as enforcement of contempt proceedings'" may justify abstention under *Younger*).

Similarly, "the 'vindication of important state policies such as safeguarding the fiscal integrity of [public assistance] programs'" may also put a state court proceeding into Younger's third category. *Dudla v. P.M. Veglio LLC*, No. 1:13-CV-0333, 2016 WL 1068120,*7 (N.D.N.Y. Mar. 15, 2016) (quoting *Moore v. Sims*, 442 U.S. 415, 423 (1979)). Furthermore, "[i]n the context of applying the *Younger* abstention doctrine, courts have found that 'the State has an important interest in regulating zoning and land use.'" *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d

552, 558 (E.D.N.Y. 2014) (quoting *Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y. 2013)) (other citation omitted).

### 1. First Prong

Under *Younger*'s first prong, "[n]ot only must state proceedings be pending[,] . . . the proceedings must have been initiated 'before any proceedings of substance on the merits have taken place in the federal court.'" *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009) (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984)). Additionally, "a party ... must exhaust his state appellate remedies before seeking relief in the District Court[.]" *Glatzer v. Barone*, 394 Fed. Appx. 763, 765 (2d Cir. 2010) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 610 (1975)).

In the present matter, Plaintiffs appealed Judge Lambert's October 22, 2019, decision on November 18, 2019, and their case before the Otsego County Supreme Court remains pending. As "[a] state action is considered 'pending' for *Younger* purposes through the completion of the state appeals process," to the extent that the proceedings in the present matter remain pending before the state supreme court, they easily qualify as "ongoing" under *Younger*. *See Choi v. Kim*, 96-cv-2086, 1997 WL 722708, *5 (E.D.N.Y. Sept. 25, 1997) *aff'd*, 166 F.3d 1201 (2d Cir. 1998) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 594 (1975)); *see also Glatzer v. Barone*, 394 Fed. Appx. 763, 765 (2d Cir. 2010) (finding that *Younger* abstention was warranted when the plaintiff's "state appellate proceedings were still pending").

Both parties' submissions indicate that their dispute continues before the state court. While the state court issued a decision on the order to show cause on March 12, 2020, granting the application and finding Plaintiffs in contempt, Plaintiff still has an appeal pending regarding the state court's earlier decision and the supreme court matter remains open. Thus, as Plaintiffs face

9

pending proceedings before the state court, those proceedings would qualify as ongoing under *Younger* regardless of whether Plaintiffs decide to file an appeal of the March 12, 2020 decision. *See Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 367 (E.D.N.Y. 2018) (holding that "to the extent there is a pending action against [p]laintiffs in the Village Court, *Younger*'s first requirement is satisfied").

### 2. Second Prong

*Younger*'s second prong, requiring that "an important state interest is implicated in that proceeding[,]" has also been met in the present matter. *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). "[D]etermining whether a state interest is 'important' turns not on the narrow outcome of the particular state court proceeding at hand, but rather on the importance of the generic proceedings to the state." *Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 367 (E.D.N.Y. 2018) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989); *Grieve*, 269 F.3d at 152).

"It has long been held that issues involving public welfare and safety fall squarely within a state's plenary police powers and therefore implicate important state interests." *Homere*, 322 F. Supp. 3d at 367 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). "In the context of applying the *Younger* abstention doctrine, courts have found that 'the State has an important interest in regulating zoning and land use.'" *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 558 (E.D.N.Y. 2014) (quoting *Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y.2013)) (citation omitted); *see also Novie v. Vill. of Montebello*, No. 10-CV-9436 CS, 2012 WL 3542222, *12 (S.D.N.Y. Aug. 16, 2012) (collecting cases) (finding that a "state proceeding implicates an important state interest insofar as it concerns a town land use regulation akin to a zoning

requirement"). "[A] local building code is a policy manifestation of that uniquely local interest in public health, wellness, safety, and comfort[;] ... any enforcement proceedings against [p]laintiffs initiated for violations of the [v]illage building code satisfy *Younger*'s second requirement." *Homere*, 322 F. Supp. 3d at 368.

The genesis of the present matter lies in Plaintiffs' alleged failure to comply with the City of Oneonta's housing and building codes, as well as the New York State Multiple Dwelling Law. *See* Dkt. No. 16-1 at 10. In its October 22, 2019, decision and order, the Supreme Court found that Plaintiffs' "proof failed to sufficiently rebut the evidence" of "significant outstanding violations" of those codes. In fact, that court specifically found that "[t]hese violations were serious and involve the health and safety of the public." Thus, "[i]t is clear the state interests implicated in the State action, to wit, the ability of the Town and the State to regulate zoning and land use, as well as the interest in protecting the health of its citizens and the environment, are important enough to warrant abstention." *Donangelo, Inc. v. Town of Northumberland*, No. 03 CV 934, 2005 WL 681494, *2 (N.D.N.Y. Mar. 24, 2005) (collecting cases).

Lastly, the state court action, in addition to enforcing the important state interests discussed above, "seeks to sanction the Plaintiff for an allegedly wrongful act of violating a court order" and thus "involves an order uniquely in furtherance of the state court's ability to perform its judicial functions." *Jureli*, 53 F. Supp. 3d at 560. Accordingly, the state court's order to show cause "clearly constitutes a civil enforcement proceeding" that falls under *Younger*'s second category. *Id.*; *see also Juidice v. Vail*, 430 U.S. 327, 335 (1977) (finding that enforcing a state court's contempt process "is surely an important interest" under *Younger* because that process is how the state "vindicates the regular operation of its judicial system"); *Dosiak v. Town of Brookhaven*, No. CV 16-6658, 2017 WL 7048912, *7 (E.D.N.Y. Nov. 27, 2017) ("Plaintiffs'

11

claim [challenging a state court's order to show cause] here clearly implicate both civil enforcement proceedings and New York State's interest in enforcing the orders and judgments of its courts. . . . *Younger* abstention is therefore appropriate").

Accordingly, the Court finds that *Younger*'s second prong has been satisfied.

### 3. Third Prong

*Younger*'s third and final prong requires that "the state proceeding afford[] the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). In the present matter, nothing in the record suggests that the state supreme court or appellate division is unable to adequately adjudicate Plaintiffs' federal constitutional claims. *See Homere*, 322 F. Supp. 3d at 368. In fact, Plaintiffs asserted their federal claims during the state court proceeding. Specifically, in their answer in the state court proceeding, Plaintiffs brought counter claims alleging violations of their due process rights under the Fifth and Fourteenth Amendments.

Accordingly, the Court finds that the third prong under *Younger* has been satisfied. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (finding that "respect for the ability of state courts to resolve federal questions presented in state-court litigation" mandates *Younger* abstention where pending State proceedings involve enforcing orders and judgments); *Spargo*, 351 F.3d at 77 ("[I]n conducting the Younger inquiry, considerations of comity 'preclude[ ] any presumption that the state courts will not safeguard federal constitutional rights'") (quoting *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)).

### 4. Bad Faith Exceptions

Even when a case has met all three of *Younger*'s prongs, "federal relief is obtainable[,] ... where the there is a showing of bad faith or harassment in bringing the or conducting the state proceeding." *Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F. Supp. 585, 591 (E.D.N.Y. 1997) (citing *Younger*, 401 U.S. at 50). "[F]or such a showing to be made, generally 'the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome.'" *Homere*, 322 F. Supp. 3d at 368 (quoting *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994)) (citation omitted); *see also Kugler*, 421 U.S. at 126 n. 6 (noting that bad faith under *Younger* "generally means a prosecution has been brought without a reasonable expectation of obtaining a valid conviction"). Furthermore, "[a] pattern of harassment both before and after institution of the state prosecution would be probative of the animus that attended the decision to prosecute." *Colonial First Properties, LLC v. Henrico Cty. Virginia*, 166 F. Supp. 2d 1070, 1087 n.12 (E.D. Va. 2001).

In the present matter, Plaintiffs have failed to show that Defendants brought the state proceedings in bad faith, *i.e.*, with "no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994)). Plaintiffs assert that Defendants acted in bad faith prior to and throughout the state court proceedings. *See* Dkt. No. 1 at 3 (stating that Defendants "never recognized [Plaintiffs'] arduous work" to improve the Property and used "false statements, weaponized the code enforcement office and us[ed] false pretenses" to evict their tenants). However, no facts in the record suggest that Defendants had "no reasonable expectation of obtaining a favorable outcome" in the state proceedings. *Cullen*, 18 F.3d at 103. Nor does the record contain sufficient evidence to find that Defendants harassed Plaintiffs in bringing the proceedings. *See Colonial First Properties*, 166 F. Supp. 2d at 1089 (finding that the plaintiffs failed to establish harassment in a police investigation showing no signs of "malice, use of illegal

arrest methods, high numbers of repeated arrests and raids[,] or evidence of a concerted effort to put [the plaintiffs] out of business").

Plaintiffs appear to deny all code violations brought by Defendants. *See* Dkt. No. 18 at 4 (stating that a January, 2019, inspection had found a "[s]mall number of violations — cosmetic ones, no hazardous [ones] were found, and corrections were done with pictures sent to my lawyers ... [who] checked everything"). Plaintiffs further allege that Defendants offered misleading photographs to establish the code violations in the state court. *See id.* ("the code enforcement officer ... [was] looking only in storage areas, places that are not for living, taking pictures to use against us"). Lastly, Plaintiffs also attack the state court judgment for being "jurisdictionally defective — thus ... not just void-able [sic], but Void, as in []never existed, as in []zero" and for being "a pure punishment order ... meant from the beginning as a punishment order." However, these "allegations [of bad faith and harassment] are too conclusory and barebones to serve as the factual predicate for a plausible finding of bad faith." *DeMartino*, 167 F. Supp. 3d at 355-56. Furthermore, Plaintiffs brought a number of the same claims during the state court proceedings, which the state court rejected.

Accordingly, the Court finds that Plaintiffs have failed to demonstrate that the bad faith exception to *Younger* abstention should apply. Therefore, the Court "must abstain from exercising subject matter jurisdiction over" these claims. *See Wilson v. Emond*, 373 Fed. Appx. 98, 100 (2d Cir. 2010).

## C.     Rule 12(b)(6)

Even assuming that this action was not barred by *Younger*, the complaint is nevertheless subject to dismissal.

14

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," see Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570. However, a complaint filed by a *pro se* litigant should not be dismissed without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991) (citation omitted).

Additionally, "in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (citations omitted). The Second Circuit has directed that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

In the present matter, even affording Plaintiffs the special solicitude due to *pro se* litigants, the complaint fails to plausibly state any cause of action. In the "complaint," Plaintiffs complain that they are being charges fees by the City of Oneonta that they believe they have already paid and that David Merzig and Margie Merzig "continue to destroy [their] business by removing tenants." Dkt. No. 1 at 2. Further, they claim that federal agencies were instructed "by David Merzig to stop payment and remove tenants from [their] property." *Id.* Plaintiffs then mention the fact that they still have a case pending in Otsego County Supreme Court and that the lawyers that they had previously retained in the state court litigation have since withdrawn. *See id.* Nothing in the complaint even hints at what federal causes of action Plaintiffs are attempting to assert.

Attached to the complaint are various exhibits that are likewise unhelpful. For example, the first exhibit is a letter Plaintiff Melania Pervu sent to the Attorney General of the United States asking for assistance with the issues underlying the state court litigation. *See* Dkt. No. 1 at 3. Also attached is a scheduling order from the Otsego County Supreme Court and the various March 8, 2018 eviction notices sent by the City of Oneonta Department of Law to both tenants and social services agencies. *See id.* at 4-9.

As Defendants correctly contend, Plaintiffs have failed to plead any plausible cause of action. Accordingly, the Court grants Defendants' motion to dismiss on this alternative ground.

**D.     Leave to Amend**

"While *pro se* plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." *Hassan v. U.S. Dep't of Veteran Affairs*, 137 Fed. Appx. 418, 420 (2d Cir. 2005) (citing *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69–70 (2d Cir. 1998)). "Amendment of a complaint

is futile where the proposed amended complaint would be unable to withstand a subsequent motion to dismiss." *Tatum v. Oberg*, No. 08 Civ. 1251, 2009 WL 5066812, *2 (D. Conn. Dec. 18, 2009) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

In the present matter, there is no question that granting Plaintiffs leave to amend would be an exercise in futility. Any amended complaint, even if it were to plausibly allege claims under 42 U.S.C. § 1983, it would nevertheless be subject to dismissal under *Younger*. Accordingly, Plaintiffs' complaint is dismissed with prejudice.

## IV. CONCLUSION

After carefully the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 2, 2020
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge